Opinion op the Court, by
Judge Mills.
THIS is a summons and petition, brought in the court below against the President, Directors and Company of the Bank of Kentucky, on the following note °f that ifistitution, usually styled a post-note:
“ One hundred and eighty days after date, the President, Directors and Company oflhe Bank of Kentucky promise to pay, at their office of discount and deposite *226 ju Glasgow, to William T. Busb, presided, or order, seven hundred dollars. Frankfo.rt, 22d December 1819.
As banks are local, bank notes arc payable at the place mentioned on the'cnntn.of’ is not violated until a demand & mentVtTiiát place.
wan<TiU° the place need” not bn slated in llic dentar-lion will lie on a bank `-
The want demand at the placo ouThf'thc plea of the defendants,* ako'aíletrean ability &wü-lingnéss on their part to a demand had been made, & court!°nC^ m
Action in the Franklin petition' and summons, on a b-uik note thi^Ola^ow branch; píen, rit> demand at ¡.hat branch: Held, that a Petltlün an<^ ue, & that the plea fnn,^ílni1110 ega e en°e’
*226 Will. S. Waller,.Cashier”
(Signed) Rob’t. Pres't.
This note was endorsed or assigned to the plaintiff. The petition is in the usual form. The bank appeared and demurred to the petition. The court below overruled the demurrer, and gave judgment for the P^;l’u^^'i from which judgment the bank appealed, and. n°w contends in this court, that as the note was paya-Die at a certain and distant place, the place of payment part of the contract, and imposed upon the plain-Pr('cedent condition of making a demand at the office of discount and deposite in Glasgow, before the commencement of suit; and as there is no demand al-5*Sed> at ^!e proper place, in the petition, and the form of the pclition admits of no such averment, and as this statutory remedy only applies to notes or bonds for the direct, iinj not contingent payment of money, that the court below ought to have sustained the demurrer, and thus terminated the suit.
When we look into the law on the subject of con-h'aets, we ^ave 110 hesitation in saying that the place of payment, in this instance, is a component part of the contract. Such is (he meaning of the words, and the construction put upon them by common sense. Such have been the uniform modern decisions on the subject of promissory notes, even where the notes were made, PaJ'fddc ky one individual to another; although, in bills °f exchange, where the acceptance was thus qualified, by agreeing to pay at a certain place, the authorities are contradictory, some affirming that the acceptance 'ms (¡ualiífea, and that the bill was payable there, and no where else, and of course the demand he made there; and others, that the addition of place was a bare expansion of the engagement; that the acceptance was general, and the annexing the place vtas only a memorandum pointing out, in addition the general engagement, a place where the holder-cad n!1(l get the money: but be was not bound to apply there, before he brought suit against the accep-ter. We shall barely remark, that we do not perceive ^ie d*sldnc*'on between promissory notes and accepted bills in this particular, nor the reason why a contract made by a bill of exchange, by an accepter, should be *227 different in effect and construction from <?ne expressed in the bame wórds, made' by a promissory note, while it remains*''lawful fo;- ^n accepter ,,to qualify his accep tance, either^as to time, place or sum, when'the face of the bill is general. That he can do so, is admitted on all hands and in every book: and the holder is at liberty to accept such qualified acceptance, at the risk losing the security of drawer and endorsers, or he may, reject such acceptance, and treat it as a nullity, and protest the bill and give notice, and look to the drawer and endorsers for payment. Without, however, taking up more time, in either attempting to reconcile or give preference to these conflicting decisions on bills of exchange, we shall confine ourselves to promissory notes, as this is one. On these, as said before, the decisions arc unanimous, that the place is part of the contract; that the demand must be made there, and no where else, except in cases where the place of payment was pointed out in a memorandum on the margin or at the bottom of the note. In such cases, the place has, in some decisions, been treated as an expansion of the promise, or direction to the holder, as in bills of exchange. But these latter decisions cannot be entitled to any weight, when tested bv the settled doctrine of this, court, with regard to the effect of such memorandums, or writings,; and that is, if the memorandum was written at the same time when the original writing was, made, by consent of the parties, it becomes as much a part of the original contract, and must be faken as fully iato consideration in giving a construction to the contract, as the words inserted in the body of the instrument. On the contrary, if such memorandum was made without the privity or consent of both, it cannot alter, if it does not destroy the contract. We, therefore, cou-ceive that in all notes, place, when designed to be part of the contract by the parties, is an essential part of the-contract, and there the payment must be. If such be the law with regard to promissory notes between individuals, surely it is peculiarly applicable to notes given by a bank, which is local by law^as well as all its offices. it is created and made stationary by law; and it is understood by all, that it must and docs stand and; pay, and cannot become transitory, and search the-country for its creditors, as individuals generally musí..
*228 But, after wc have arrived at this conclusion, that the place pointed ou,t in the contract is the proper one, and becomes part of the contract, and that there,- and no where else, is the place of demand and place of pay-meat, still the question remains, is the holder of the uo^e bound to aver and prove such demand, as part of his title, or may he allege the breach of non-payment generally, as is’done in this instance, and the readiness on the day and at the place, come in, on the part of the defendant, by plea, to excuse from the damages and costs? This is a question of some difficulty, and may be supported and contested by potent reasons. It is well settled law, that where payment is to be made at a particular place, tender and readiness, and want of a demand, must come from the defendant, and the plaintiff may content himself with assigning a general breach. In bonds with condition to pay at a particular place, this is asserted to he law. The defendant there must show his readiness at the lime and place, and thus save the penalty, it must, however, be admitted, that the case of bonds with condition, is not precisely analogous to the present case: because there the action is founded, and the plaintiff must declare on the penalty, without any regard to any averments of performance of any stipulations that the condition of the instrument may contain. But still the case of bonds with condition is not the only case embraced by the rule. Bonds without condition, usually called penal hills, and covenants, are also within it. Rents, by law, arc made payable on the premises leased; and whether the contract between the parlies, or the law of the land, fixes the place, the consequences must be the same. And in all these cases the rule is the saíne. The general breach is sufficiept, and Ihc lender and want of demand comes on the part of the defendant. In the case of mortgages, where it was held that money was to be paid on the land mortgaged, the rule was held to be the same. Co. Litt. 211 a. All the old forms of entries in the ancient books are to the same effect, with regard to every contract there noticed. This, then, must be taken as the settled law, with regard to ordinary contracts, and be admitted as a general rule.
It is, however, contended that the rule is only a general one, and that to it there are sundry exceptions. For Instance, it is contended that contracts of it com- *229 mGHttúil ua.fcire ou^ht not to be embr^ce^, and that modern ca^es exempt them 5 that in the tasé of a promissory note by. a merchant, or a bill of exbhang'e accept- ; ed by him, he o.ught ifápfo- be affeoted; for although, by the foregoing principles, he might tender th'e,money at the place and on the day of payment, yet he would be bound by nis plea, when sued, to insert'in his plea semper paralus, and bring the money into court; that proving himself always ready, would impose upon him hardships; bu.t more th9.11 all, it would be a greater hardship, if he was hound to bring the money into court, thus to compel him to translate the' funds from the place pointed out in the contract, to a distant court, which was the very thing he stipulated against, when he lixed the place.. More than all, it may be insisted that if the bank is bound to bring her funds across the slate, and exhibit them in court where she is sued, it would subject her to expence and extraordinary trouble, and even compel her to place her funds in transitu, when the law required them to be stationary.
{■ As to compelling either merchant or bank to plead and prove that they were always ready, at the proper place, we think it imposes no great hardship. If they have contracted a debt, tiiey ought to be always ready to pay it. The title to that much money is in the creditor, and it ought to he kept lor him, afler it is due. Men are prone enough to violate their contracts, and to appropriate to other uses, what they ought to reserve for their creditors. It is, therefore, a good rule of ethics, as well as law, to remove from them any temptation to make such appropriations.
As to compelling them to bring the money into court, the argument has more force. The principles we have adopted, it is true, only compel either merchant or bank, before suit, to have the money ready, and to keep it at one place, named in the contract. The merchant need not tender it in his own counting-room, or have it always about him, or hunt his creditor for the purpose of payment, or have two or three times the amount prepared at different places. But when either he or the hank is sued, to compel them to bring the money into court, does impose upon them a greater burden, subject them to some risk and expence,- and perhaps subject them to a difference of value, il the money is worth more where it is tendered than where it is kept. The *230 force of this argument is still greater, when%e consider ^10 to Ije'tbe local creature of tbe statute, having in its coffers the funds of government, as well as those of individuals, antí. compelíale bj law to keep those-funds generally secure at one place.
It must, at the same time, be admitted as^cftled law, that pleas of tender of money, do require a profert of the.money in court. This is at least a general, if not an universal rule. Whether, if the money, by being detained at the place pointed out in the contract, was lost by fire or some casualty beyond the control of the debtor, this might not be a good exception to the rule, is a question of some moment, and one which wé need not now discuss. Certain it is, the exceptions are few, ifany exist. Whether this case of the bank ought to be one, is a question that exhibits a considerable figure in this case, the decision of which must measurably end the controversy.
We do find modern decisions which excuse the merchant from transferring the funds necessary to discharge a bill or note, and from presenting the money in court. If a merchant, or any individual dealing in mercantile paper, payable at a particular place, is to be excused, we should have no hesitation in excusing the bank, which is a local creature of statute. What would be the effect of permitting either a merchant or bank to excuse themselves, by pleading a readiness on the day, at the proper place, without producing the money into court, is somewhat doubtful. We have seen no deci■sion which treats of tbe consequences. Suppose such a plea is allowed, one of two replications, at least, in general, must be used; either the plaintiff must reply a demand and refusal, which might destroy the effect of the plea, or lie must traverse the readiness or tender. If the first, or indeed either of these issues were found for him, he would be entitled to judgment. But, suppose either found against him, .would not the contract be discharged, or could he take it afterwards and make a demand, and bring a new suit upon the contract, and recover thereon? To this inquiry we have found no satisfactory answer. Although the day of’payment is past, could it pass, and yet no cause of action accrue until afterwards? If no demand was made at the proper time and place, could the defendant rest on the want of it, without regard to readiness on his part? And after- *231 by a s(ubsequent demand ^ These are qffestiojp's of some mo-jnent; but, without solving them nov^'we candidly ad-tbat there are strong argil mentsNn both sides of question, arising ab inconvenienti, and from subsequent resulte, and perhaps neith'er course is free from difficulty., it is also argued, that in most cases the general rule is, that he on whom a precedent condition is imposed by his contract, must averand prove it, to‘sustain his cause of action; but to this we have seen, in some cases at least, there is a well founded exception, with regard to money payable at a particular place, either by law or<by the contract. In such a difficulty, we will choose the side which presents the least inconvenience.; and the rule which requires the money to be brought into court, is fraught with the least inconvenience and fewer entangling consequences. It will excuse the debtor from carrying the money about him, or having it. in any place hut one. It will only hind him to keep it there, until it is brought into court. It will then excuse him from costs or damages, and the debt will be discharged. On the contrary, the other will pay costs and lose damages for his negligence, but will receive his own, without the trouble of a new suit, or being in danger of losing his debt forever. We have seen, that in the case of domestic contracts of othet kinds, the rule embraces them, and they must conform to it. It may answer the commercial policy of England, to excuse her banks, and even her merchants, from the rule, and to extend to them greater privileges than to other classes of the community; but the equality of all, and not the preponderance of the mercantile class over others, better suits the state of our society, and the nature of our government. We, therefore, think that the contracts of merchants and banks ought to be subjected to the same inconvcnicnc.es which lie upon othbrs. The law merchant gives them privileges enough, ¿without adding another. As to banks, it is one of the wdi founded objections to their existence, that they have too many indulgences, savoring too strongly of exclusive privileges, and therefore ought not to have this, unless the law expressly' gave it.
We shall further observe, that one course of conduct, on the part of both the merchants and banks, will exonerate them nearly, if not entirely, from all the in- *232 convenientes ibab- thfe-rule now established will‘pro-dace. ■ Let the'nv be punctual in their contracts, and be ever ready tó,meet them the proper place, and but few of' their-creditors indeed," will not prefer applying at'the-proper place, to a hasty and dangerous application to law, in'the first instance. ¿Hence, the cases where prompt and punctual hanks or merchants will be compelled to transport their money from its proper place to the court-house, will be rare indeed. Thus punctuality in dealing will secure them from inconvenience, while, willrout that punctuality, they might cm-barrass their creditors much, while they themselves were neither willing nor prepared to pay a cent. - -
We, therefore, conceive that it was not sufficient for the bank, in this instance, .to rely on the absence of :i demand, in the pleadings of the plaintiff; and that her plea of no demand, which was also overruled on demurrer, was insufficient, and ought to have contained some substantial affirmative matter, and a visible proferto! what the contract demanded; and the court below did not err in its decisions on these questions.
The judgment must be affirmed with damages and costs.