Mr. Chief Justice Johnson delivered the opinion of the Court. The first error assigned relates to the sufficiency of the notice upon the defendants, Brodie, Ball and Reynolds. This assignment involves two distinct questions. The first respects the sufficiency of the order of publication itself; and the second, the proof going to show that it had been made in accordance with the statute. The 13/A and 16th s-'c.nf ch. 28, Dig,provide that“Ifany complainant, or some person for him, shall file with his bill or petition an affidavit, that part, or all, of the defendants are non-residents of the State, the court, or clerk thereof in vacation, shall make an order, directed to the non-resident defendants, notifying them of the pendency of the suit: in which order and notice it shall not be necessary to state the substance of the bill or petition, but the names of the parties and the nature of the complaint shall bo stated in general terms, which shall be sufficient; which notice shall require the non-resident defendants to appear on a day therein named, allowing sufficient time for publication, or the bill or petition will be taken as confessed ”: and that “ Every order against nonresident or absent defendants shall be published in some newspaper printed in this State for two weeks successively, the last insertion to be at least four weeks before the commencement of the term at which the defendants are required to appear.” And the 1st sec. of ch. 8, further declares that “ When any notice or advertisement shall be required by law, or the order of any court, to be published in any newspaper, the affidavit of the printer or publisher, with a copy of such advertisement annexed, stating the number of times and date of the papers in which the same was published, or the production of the papers containing such advertisement in accordance with the law or order of court, shall be evidence of the publication therein set forth.” The statute, it is admitted, does not even require that the substance of the bill should be set out in the order of publication, but it does require expressly that the names of the parties and the nature of the complaint shall be stated in general terms. The object of the bill, as set forth in the order in this case, was to correct a mistake in the deed of trust and also to appoint a new trustee. It will be perceived upon an inspection of the bill that the objects, stated in the order, formed but a small part of those contemplated by the bill. If the whole scope and purpose of the bill was to correct a mistake in the deed of trust, and to substitute a new trustee in the place of Ball, it would not follow by any means that the defendants would desire to make any resistance to it; but when it is made to appear that it also seeks to divest titles and to correct deeds, the case assumes a much graver aspect. If their rights were sought to be thus vitally affected, there can be no doubt but that they were entitled to be apprized of it, so that they could be prepared to make their de-fence, and if possible prevent so great a calamity. The object of the bill, as set forth in the order was well calculated to mislead and lull them into a false security, and consequently could not be sufficient to meet the requirements, and answer the end of the law. The proof of the notice is equally unsatisfactory. It does not appear to have been made either by the printer or the publisher of tbe paper; nor is it stated how many times it was published or what were the dates, of the particular numbers of the paper which contained the order. These are requisites prescribed by the statute, and the court below had no authority to dispense with them. The recital in the interlocutory decree, even upon the supposition that it was conclusive upon the non-resident defendants, shows in itself that the order had not been published in such a manner as to affect the parties therein named with constructive notice of the pendency of the bill. The recital is that it appeared to the court that the “ order heretofore made in this case has been published for two weeks next before the commencement of this court.” Such, however, is not the effect of recitals in a decree in chancery. The court of appeals of Kentucy, in the case of Green's heirs vs. Breckenridge's heirs, (4 Mon. Rep. 544,) held the following: “The recitals of the decree are relied upon as showing that the court below had the proper proof before them and acted right. This presumption is a general and necessary one. But a recital of facts in a decree in chancery, where the evidence thereof must be filed, and the evidence does not appear in the record, cannot be taken as true; and this holds with regard to the service of process in the case of decrees by default, as held by this court in the case of Peers vs. Carter's heirs, (4 Litt. Rep. 228),” and in discussing the same point further they said that “ Now actual service here is not pretended, but the application is to amend and uphold and heal defects in a service, which, if perfect, could at best be constructive; and to conclude the rights of the appellants by force of law, while that law was not complied with. Such ex parte proceedings must be substantially complied with, and cannot be held to less strictness, before they can have any force. We perceive no sensible point at which we can stop, short of dispensing with publication altogether, if we once commence a dispensation, first with one, and then with another requisite of law; and the best rule is to require a compliance with every requisite or let all other acts and substitutes stand for nothing in a case where the rights of parties are liable to be taken away without any actual notice of the proceeding. Such proceedings in the case of lands are, at best, of doubtful policy and may be attended with momentous consequences, and if carried too far by construction upon construction and one dispensation of law after another, might start constitutional scruples how far the Legislature could authorize any court to revoke a defendant’s grant by ex parte proceedings, especially as it has been held, by high authority, that the Legislature cannot do so by direct legislation. We therefore cannot dispense with any requisite of the law in making publication ; and until it is shown that all the requisites are complied with, we must treat this, as well as every other decree, as void and inoperative on the rights of the parties concerned.” This authority is directly in point and conclusive of the whole question. The result therefore is that the non-resident defendants, Reynolds, Ball and Brodie, were under no legal liability to appear to the bill, and, consequently, any steps taken against them were unauthorized. It is also contended that the decree is erroneous, so far as it concerns those defendants who were regularly served with process. Ledford and Barrington are the only defendants who seem to have been served with actual notice: the former of whom made default, but the latter appeared at the return term and filed his answer to the charges made against him. Ledford having hcci. actually served with notice and having- made default, then can be no doubt but that all the material allegations in the hill, so far as they point to him, stand confessed upon the record. The inquiry arising here, then,is as to what those allegations are. It was held in the case of White et al. vs. Lewis, (2 Marshall, 124, 125,) that a decree upon an implied confession, must be taken strictly, that the facts, upon which the decree is based, should be distinctly alleged, and the decree should be confined to the facts so alleged. No intendment of a fact not within the allegations, can be made to support such a decree: that the legal presumption, drawn from the pro confesso state of a Dili, must be confined to the distinct allegations therein, and that the proofs, when any are thought necessary, must be made out con-formably to the general rules of evidence. The bill contains no distinct allegation charging Ledford with notice of the deed of trust, and without the existence of that fact it is utterly unjust and illegal that his rights should be affected by the decree. It is admitted that the bill recites the deed of trust, and states that it was with acknowledgment regularly recorded in the record of deeds in the proper couffiy. This might all have taken place, and yet not until after the conveyance from Pulliam to Ledford. It does not therefore amount to an averment of notice even by implication. The bill is equally silent as to any specific charge of fraud against the defendant Ledford, nor is it pretended in the recitals in the decree that any fraud was found against him. The' only charge made against him in the bill, is that he purchased of Pulliam, and then he is interrogated to say whether he was not then in the possession of the lot thus pui'chased. The recital in the interlocutory order is that it appeared that he had been regularly served with process, and upon this fact alone he was formally divested of his title by the final decree. It is clear, therefore, that the bill contained no such allegations as would authorize the decree rendered against him; if indeed it could be said to contain any equity whatever as against him. Barrington, the other resident defendant, appeared and filed his answer, in which he admitted that he had purchased of Bro-die as charged, but distinctly and positively denied any knowledge of the conveyance in trust to Ball. This answer must be taken as true unless overturned by the testimony on the other side. If it was intended to rely upon constructive notice the answer could have been overturned by direct proof of the acknowledgment and record of the deed of trust, anterior in point of time to his purchase; but if, on the other hand, it was proposed to fix actual notice upon him, nothing less than two witnesses, or one witness and strong corroborating circumstances would have been sufficient. The record is wholly at fault in respect to both kinds of proof, and in the absence of the proof, the presumption is that it was not adduced upon the hearing. The court of appeals of Kentucky in the case of Hammon and wife vs. Pearl, reported in 6 Mon. p 413, said, “ The evidence to sustain a decree must appear: the appeal in equity cases is upon matters of fact, as well as matters of equity founded on the facts. In general parol proof is not admissible in our courts of equity, unless it be merely to prove an exhibit or such like. We must take such facts as true and those only which are sustained by the proofs and exhibits sent up on appeal.” It is clear therefore that, in case the bill shall be considered as containing equity as against Barrington, the proof is totally wanting to authorize the decree that has been rendered against him. The bill contains no direct charge of notice either actual or constructive against Bar-rington. The allegation in respect to him-is that Brodie conveyed certain lands to him and that he was then in possession of the same; and that, although he then claimed to have • a good and bona fide title to said lands irrespective of said deed of trust, yet the complainant charged that his title was subject to that conveyed by the deed of trust. There is most unquestionably nothing in all this that can call into exercise the powers of the chancellor. Nothing short of fraud in Barrington, either in purchasing with actual notice of the deed of trust, or with constructive notice can so operate as to authorize the decree rendered against Mm. He is not charged with notice either actual or constructive; consequently the decree reciting that he had notice ■of the deed of trust is wholly inoperative as the bill had laid no foundation for the introduction of evidence tending to establish that fact. See Baraque & Mason, use Woodruff, vs. Manuel (2 Eng. 516,) and Harding vs. Handy, and Handy vs. Harding, (6 Pet. Cond. Rep. 240.) In the latter case it was laid down that, “ If indeed it were true in fact, that the bill does not allege this incompetency so as to put it in issue, the objection would be conclusive ; for it is well settled that the decree must conform to the allegations of the parties.” The case of Wilks and wife vs. Rogers et al. (6 J. R. p. 564,) is to the same effect. It was there said by Kent, C. J. that, “ The general rule is, that no interrogatories can be put that do not arise from some fact charged in the issue : (Gilbert’s Forum Romanorum, 218) and that, in Irnham vs. Child, (1 Bro. C. C. 94) Lord Thurlow would not listen to any evidence that went to prove a deed fraudulent, because there was no allegation of fraud in the bill. It is not a sufficient answer to the objection in this case, that it must be deemed to have been waived,, because not raised upon the hearing. The counsel might well have presumed that the testimony which looked to that point, would not have been taken into consideration. True it is that the decree recites that Barrington had notice of the deed of trust, yet such recital is not conclusive upon him, since he was not charged with such knowledge by the bill. A party cannot make one case by his bill and establish another and distinct one by his-proof. The allegata and probata must strictly correspond. This doctrinéis borne out by all the authorities upon the subject. It is also insisted that the bill is demurrable for want of equity so iar as it relates to Ledford and Barrington, upon the ground that it fails to exhibit a copy of the acknowledgment and registration of the deed of trust. The bill avers that the deed with the acknowledgment thereof, was regularly recorded in the record of deeds in the county. The 48th sec. of ch. 28 of the Digest, declares that “ If either party shall rely on any record, deed or writing, the substance thereof shall be stated in his bill, answer or plea in the same manner as is required in pleading at law, and he shall file with his bill, answer or plea as exhibits an authenticated copy of such record and a true copy of such deed or writing and hold the original subject to the order of the court and inspection of other parties in term time, if within his power. The complainant in his bill has most unquestionably declared upon a record,, and consequently he was bound by the statute cited to have filed an authenticated copy of the same with his bill, and more especially so in order to affect the rights of those who were entire strangers to the deed. Here is a variance between the allegation and the proof which undoubtedly would have been fatal upon a demurrer. It is likewise contended, by the counsel for the defence, that the bill is fatally and vitally defective for a failure to make Pul-liam a party defendant. The charge is, that Reynolds sold to Brodie, that Brodie sold to Pulliam, and that Pulliam sold to Ledford. A court of equity aims to do complete justice by deciding upon and settling the rights of all who are interested, either legally or beneficially, in the subject matter in dispute : that a decree when made may be fully performed, further litigation prevented; and at the same time that no injustice be done by a partial view only of the real merits of the case. In the case of Wood vs. Dummer, (3 Mason R. 317,) the rule and the exceptions are summed up thus : “ The general rule is that all parties materially interested, either as plaintiffs or defendants, are to be made parties. There are exceptions just as old and well founded as the rule itself. When the parties are beyond the jurisdiction, or are so numerous that it is impossible to-join them all, a court of chancery will make such a decree as it can without them. Its object is to administer justice; and it will not suffer a rule founded on its own sense of propriety and convenience to become the instrument of a denial of justice to the parties before the court, who are entitled to relief.” Lord Eldon, in the case of Cockburn vs. Thompson, (16 Ves. 329,) spoke to the same effect in regard to the general rule, and further remarked that “All these exceptions, however, are so qualified that it must be apparent to the court that, by waiting to join all persons interested, the delay and inconvenience would obstruct and probably defeat the purposes of justice; and by dispensing with them, their rights would not be prejudiced: for, otherwise, such is the solicitude with which the interests of absent persons, not made parties, are watched and protected in equity, the court would not make a decree.” “It is often proper to make persons parties, and yet if they are not, the suit may proceed without being on that ground defective, but it is indispensably necessary that all persons who have a clear right to disengage the property from all incumbrances, in order, to make their own claims beneficial or ávailable, should be joined ; for, unless all the mortgagers, or their representatives are made parties, a complete decree, embracing the whole subject matter and declaring the rights of ail who are interested in the estate, could not be made: and if the want of proper and necessary parties is apparent on the face of the bill, the defect may be taken advantage of on demurrer. If the defect is vital to the character of the bill or to the relief asked, the objection may be insisted upon at the hearing; and if the court proceed to make a decree, it may be reversed for error on that account. (See Porter et al. vs. Clements, 3 A. R. 382, and the cases there cited.) In Curtis vs. Turner, ex. of Jones, (6 Mun. R. 44,) the court said : “ The court (not deciding whether the appellant, at the time he purchased the land in controversy, had such notice of the equity now set up against it as would have postponed him had he been the first or original purchaser) is of opinion that he is protected in his said purchase, if those from whom he claims had no such notice. While a derivative purchaser with notice is protected by the want of notice in him from whom he claims, it is important to ascertain the ground on which the original purchaser is himself postponed in equity. That ground is that the taking the legal estate after notice of a prior purchase or equity, makes the party a mala fide purchaser and amounts to a fraud. In order to fix this fraud, however, the proof of notice must be clear. If it be merely doubtful, a presumption of fraud will not be made.” The principle to be extracted from this decision is that, although it should be clearly proven that a derivative purchaser had a knowledge of the prior equity, yet he could not be affected in his rights, unless notice should also be brought home to him under whom he claimed. Let us apply this principle to the facts in this case, as disclosed upon the face of the bill, and then see how the parties would stand affected. It might be admitted, for the sake of argument, that Ledford did actually appear and file his answer, and that upon the trial it was fully and clearly proven that he had notice of the equity secured by the deed of trust. That fact, clearly established, would not. authorize the decree rendered against him. unless it also appeared that Pulliam had notice also. Pulliam was not charged with notice, nor was he made a defendant. This decree presents the strange anomaly of a deed to a remote and derivative purchaser being canceled and set aside whilst that of the party under whom he claims is left untouched, and in full force and effect. It would be difficult to conceive of a case where the necessity of bringing in a party could be greater in order to afford him a protection in his rights. Under the decree rendered in this cause, Pulliam’s vendee, and to whom he is liable in case of a failure of title, is absolutely divested of all right and title to the property concerned, and that too without the vendor ever having had any opportunity afforded him to show cause against it. Pulliam’s rights cannot possibly be affected by such a decree, and, as a necessary consequence, the court below, without bringing him before it, could not proceed to make a decree. This is such a defect, therefore, as is vital to the character of the bill, and consequently could be taken advantage of upon the hearing, and, if remedied, it is good cause for a reversal of the decree. From every view that we have been able to take of this case, we are clearly of opinion that the decree ought to be reversed and set aside. It is therefore ordered, adjudged and decreed that the decree herein rendered be, and the same is, hereby, for the errors aforesaid, reversed, annulled, and set aside; and it is further ordered that the cause be remanded to the circuit court of Washington county, with instructions to proceed herein according to law, and not inconsistent with this opinion, and to permit both parties to amend their pleadings, and procure testimony if they shall desire to do so. Mr. Justice Walker did not sit.